UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES**<br><br>v.<br><br>**JEFFREY EWING** | Criminal Action No. 20-220 (JDB) |

## MEMORANDUM OPINION

Having been under supervision for over two years, Jeffrey Ewing now moves for early termination of supervised release under 18 U.S.C. § 3583(e)(1). After considering the relevant factors under 18 U.S.C. § 3553(a), the Court finds that early termination is warranted by Ewing's post-release conduct and the interest of justice. Accordingly, the Court will grant Ewing's motion.

## Background

In January 2021, Ewing pled guilty to unlawful possession of a firearm by a person convicted of a crime punishable by more than one year in prison in violation of 18 U.S.C. § 922(g)(1). Plea Agreement 1, Dkt. 18. The underlying convictions were first-degree assault and unlawful possession of a firearm. Id. at 3. At the time of Ewing's offense, the statutory maximum for a violation of section 922(g)(1) was ten years in prison and three years of supervised release. 18 U.S.C. §§ 924(a)(2) (maximum prison term for section 922(g)(1) violation), 3583(b)(2) (maximum term of supervised release for Class C felony), 3559(a)(3) (defining felony as Class C where maximum prison sentence is from ten to 25 years) (2018).[1]

---

[1] In June 2022, Congress increased the maximum penalty from ten to fifteen years in prison and moved the relevant penalty provision from 18 U.S.C. § 924(a)(2) to § 924(a)(8). See United States v. Butler, 122 F.4th 584, 588 & n.3 (5th Cir. 2024).

1

Based on Ewing's offense level and criminal history category, the guidelines range for a term of imprisonment was from 37 to 46 months.² The range for supervised release was one to three years. U.S.S.G. § 5D1.2(a)(2). The government recommended 28 months in prison and three years of supervised release. Gov't's Mem. in Aid of Sentencing 7, Dkt. 22. Ewing requested 20 months. Def.'s Mem. in Aid of Sentencing 9, Dkt. 23. The Court sentenced Ewing to 27 months followed by three years on supervised release. Judgment 2-3, Dkt. 27.

In August or September 2023, Ewing was released from prison and began his period of supervised release.³ Ewing's time under supervision has mostly passed without incident, indicating successful reintegration into society. He has been working as a truck driver for the last 18 months, lives with his mother, and recently had a baby with his partner of several years. Def.'s Mot. for Early Termination of Supervised Release 2, Dkt. 38. He plans to purchase a truck, get his commercial driver's license, and start his own trucking business. Id. He also spends time with his siblings and their children, including volunteering as an assistant coach for his nephew's little league football team. Id. at 3. And his social circle is mostly his work colleagues. Id.

However, in August 2025 probation petitioned for a hearing on violations of supervised release (HOV), reporting one instance of unlawful use and possession of tetrahydrocannabinol (THC)—a controlled substance—and Maryland citations for moving violations, including negligent driving, reckless driving, and driving under the influence of alcohol while transporting

---

² A violation of 18 U.S.C. § 922(g)(1) after a felony conviction for a crime of violence—such as first-degree assault—carries a base offense level of 20. See U.S.S.G. § 2K2.1(a)(4)(A). Ewing received a three-level decrease in offense level for acceptance of responsibility, resulting in a total offense level of 17. See id. § 3E1.1. Under the then-applicable guidelines, Ewing had a criminal history score of eight based on two convictions of over one year each and committing the 18 U.S.C. § 922(g)(1) violation while under a criminal justice sentence, resulting in a criminal history category of IV. See id. § 4A1.1(a), (d) (2018). Thus, Ewing's sentencing guidelines range was 37-46 months. See id. ch. 5, pt. A.

³ Ewing states that he was released from prison and supervision began on August 21, 2023. Def.'s Mot. for Early Termination of Supervised Release 1, Dkt. 38. Probation states that supervision began on September 8, 2023. U.S. Prob. Off. Pet. 1 (Set HOV Pet.), Dkt. 31. Either way, supervised release began over two years ago.

a minor. U.S. Prob. Off. Pet. 2-3 (Set HOV Pet.), Dkt. 31. After Maryland decided not to prosecute the moving violations, Probation recommended dismissing its petition and allowing supervision to resume. U.S. Prob. Off. Pet. (Dismiss HOV Pet.), Dkt. 37. Ewing also represented to the Court that the government agreed with that dismissal. Def.'s Status Report, Dkt. 36. The Court therefore dismissed the violations.

Ewing now moves to terminate supervised release early. Def.'s Mot. Probation does not oppose Ewing's petition, id. at 1, but the government does, Govt's Opp'n to Def.'s Mot., Dkt. 39. The motion is now fully briefed.

**Discussion**

Supervised release "'fulfills rehabilitative ends' and 'provides individuals with postconfinement assistance.'" Esteras v. United States, 606 U.S. 185, 196 (2025) (quoting United States v. Johnson, 529 U.S. 53, 59-60 (2000)). It enables courts "to provide postrelease supervision for those, and only those, who need[] it." Johnson v. United States, 529 U.S. 694, 709 (2000). Thus, after considering the 18 U.S.C. § 3553(a) factors except (a)(2)(A) and (a)(3), a court may terminate a term of supervised release following the first year of supervision "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1).

Modification of supervised release must also comport with the Federal Rules of Criminal Procedure. Id. Under those rules, a hearing is required unless the defendant waives that right or the relief sought is favorable and the government has received notice, has had a reasonable opportunity to object, and has not done so. See Fed. R. Crim. P. 32.1(c); United States v. Tanguay, Crim. A. No. 8-cr-271-5 (RCL), 2021 WL 1966602, at *3 (D.D.C. May 17, 2021). The Court did not hold a hearing here because Ewing waived his right. Def.'s Resp. to Court Order, Dkt. 40.

I.  **Section 3553(a) factors**

Section 3553 provides that the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." Id. § 3553(a); see also Dean v. United States, 581 U.S. 62, 67 (2017) (describing this as the "parsimony principle"). The paragraph (2) considerations relevant to early terminations of supervised release are the need to "afford adequate deterrence"; to "protect the public"; and to provide the defendant with "needed educational or vocational training, medical care, or other correctional treatment." 18 U.S.C. § 3553(a)(2)(B)-(D).[4] The other relevant section 3553 factors are (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (4) the sentencing range for the offense, (5) any pertinent policy statement by the Sentencing Commission, (6) the need to avoid unwarranted sentencing disparities, and (7) the need to provide any victim restitution. Id. § 3553(a)(1), (4)-(7).[5]

To begin, the Court considers the nature and circumstances of Ewing's offense and his history and characteristics. 18 U.S.C. § 3553(a)(1). The nature of the offense weighs in his favor but its circumstances weigh against him. On the one hand, Ewing's instant offense was non-violent, although his predicate offense of first-degree assault was violent. Indeed, Americans generally have a right to bear arms, U.S. Const. amend. II, and Ewing lost that right only due to the fact of having a prior conviction for a crime punishable by over one year in prison, 18 U.S.C.

---

[4] The four considerations of section 3553(a)(2) are, in order, "retribution, deterrence, incapacitation, and rehabilitation." Esteras, 145 S.Ct. at 2038. But section 3583(e) excludes any consideration of retribution from the termination of supervised release analysis. Id. at 2039 & n.3 (citing section 3553(a)(2)(A)); see also id. at 2041 (distinguishing "forward-looking ends of sentencing (deterrence, incapacitation, and retribution)" from "backward-looking purpose of retribution").

[5] Section 3583(e) excludes consideration of the kinds of sentence available because supervised release—a component of a prison sentence—is the only matter at issue. Esteras, 145 S.Ct. at 2039 (citing section 3553(a)(3)).

§ 922(g)(1).[6]  On the other hand, in fleeing from police Ewing's firearm accidentally discharged and shot a hole in his trousers, highlighting the danger posed to any bystanders.  Statement of Offense 3, Dkt. 17.  Ewing's history also weighs against him but his characteristics weigh in his favor.  Ewing has a history of two prior serious offenses: first-degree assault and unlawful possession of a firearm.  See Plea Agreement 3.  However, he now has a "stable home, dedicated family, and consistent employment record."  Def.'s Mot. 5.  The government argues that section 3553(a)(1) weighs against Ewing, but in support it only identifies his history of firearms-related offenses.  Gov't's Opp'n 3.  That history is indeed troubling, but it must be balanced against the other section 3553(a)(1) subfactors.  Although the circumstances of Ewing's offense and his history weigh against him, the nature of his offense and his characteristics weigh in his favor, so the Court finds the first factor is neutral overall.

Next, the Court considers deterrence, incapacitation, and rehabilitation.  18 U.S.C. § 3553(a)(2)(B)-(D).  First, the Court finds that a prison sentence of 27 months followed by over two years of supervised release is a sufficient specific and general deterrent to unlawfully carrying a firearm after being convicted of a crime punishable by more than one year in prison.  In support of its argument that deterrence weighs in favor of denial, the government concedes that Ewing has been "doing well since being released from prison" but then makes the conclusory assertion that "deterrence may continue to prevent him from committing crimes."  Gov't's Opp'n 3.  Without more, the Court is unconvinced that Ewing has not been adequately deterred.

---

[6] As such, Ewing's instant offense may be characterized as malum prohibitum (wrong only because prohibited by legislation) rather than malum in se (wrong in itself).  See 1 Wayne LaFave, Substantive Criminal Law § 1.6(b) (3d ed. 2017, Oct. 2025 update); New Jersey v. T.L.O., 469 U.S. 325, 379 n.21 (1985) (Stevens, J., concurring in part and dissenting in part) (distinguishing malum prohibitum and malum in se (citing Wayne LaFave, Handbook on Criminal Law § 6 (1972))); cf. Medina v. Whitaker, 913 F.3d 152, 160 (D.C. Cir. 2019) (explaining in 18 U.S.C. § 922(g)(1) case that predicate offense of felony fraud is malum in se).

Second, Ewing's successful completion of "all of the treatment programs recommended by Probation, specifically anger management and substance abuse courses," and broader compliance with the terms of supervised release indicate that he does not pose a danger to the public. Def.'s Mot. 2, 5. The government argues that Ewing must remain under supervision to protect the public because of his history of firearm offenses. Gov't's Opp'n 3. But Ewing has already served prison sentences for those offenses—which took place nine and five years ago, respectively—and for the instant offense, and the government provides no reason why he presently poses a threat to the public. The Court also notes that, in August 2025, Probation petitioned for a hearing related to allegations of several serious moving violations and a controlled substance violation. See Set HOV Pet. But those alleged offenses were not prosecuted, Probation then moved to dismiss the petition, and the Court understands that the government agreed with dismissal. See Dismiss HOV Pet.; Def.'s Status Report. As such, the Court ascribes limited weight to the alleged violations.

Third, "Ewing's stable housing and employment" show that further supervision is not necessary for rehabilitative purposes. Def.'s Mot. 6. The government wonders "who is to say that [Ewing's] improvements are not attributable to the requirements of supervised release?" Gov't's Mot. 4. That may be true—and indeed is a large part of the purpose of supervised release—but the government provides no indication of why regression should be expected here if supervised release is terminated early after close to 75 percent completion. Accordingly, the Court finds that the relevant paragraph (2) factors weigh in favor of early termination.

Finally, the Court considers the sentencing guidelines range, Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide any victim restitution. 18 U.S.C. § 3553(a)(4)-(7). There is no restitution in this case and the parties state that there are no pertinent policy statements, so these factors are irrelevant. See Def.'s

Mot. 6 n.2; Gov't's Opp'n 2 n.1.  The sentencing guidelines range for supervised release is one to three years, so terminating supervised release now would still put Ewing's period of supervised release at almost three quarters of the recommended range.  Courts have often found the sentencing disparities factor to be of "limited utility" in the early-termination context because it is a "case specific inquiry."  United States v. Braithwaite, Crim. A. No. 11-186 (JDB), 2025 WL 1784435, at *4 (D.D.C. June 26, 2025) (first quoting United States v. Harris, 258 F. Supp. 3d 137, 145 (D.D.C. 2017); then quoting United States v. Raymond, Crim. A. No. 9-183 (RMC), 2019 WL 1858285, at *3 (D.D.C. Apr. 25, 2019)).  But see United States v. Tanguay, Crim. A. No. 8-271-5 (RCL), 2021 WL 1966602, at *5 (D.D.C. May 17, 2021) (comparing to co-defendants' sentences).  Of course, it would be unwarranted to grant early termination to certain defendants and not grant it to otherwise similarly situated defendants.  But the parties have not identified any such circumstances here.  Thus, these factors are neutral.

On balance, therefore, the section 3553(a) factors weigh in favor of terminating Ewing's period of supervised release early.

## II. Post-release conduct and interest of justice

Some courts in this district and other circuits have held that more than "model post-incarceration conduct and unblemished compliance with the terms of supervised release" is required for relief under 18 U.S.C. § 3583(e)(1).  Harris, 258 F. Supp. 3d at 148-49 & n.9 (collecting cases and disagreeing with that interpretation); see also United States v. Taylor, 729 F. App'x 474, 475 (7th Cir. 2018) (mem.) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination under 18 U.S.C. § 3583(e).").

That is a "misreading of the statute" arising from United States v. Lussier, 104 F.3d 32 (2d Cir. 1997), that most circuits—including the Second Circuit—have subsequently abandoned. See Braithwaite, 2025 WL 1784435, at *5 (collecting cases repudiating that interpretation). As explained in Harris, "construing § 3583(e)(1) to require the defendant to exhibit objectively extraordinary or unusual conduct during supervision is a stretch not expressed in the statutory text." Harris, 258 F. Supp. 3d at 149-50; accord Braithwaite, 2025 WL 1784435, at *5.[7] Instead, the statutory text gives the Court broad discretion to terminate supervised release after the first year, provided that it has considered the section 3553(a) factors and it is "satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); see also United States v. Hale, 127 F.4th 638, 641 (6th Cir. 2025) (recognizing district courts' "broad discretion" when considering section 3583(e)(1) motions).[8] The Court is so satisfied.

Ewing "exhibits not only compliance with supervision terms but also dedication to excelling in his career and close family ties." Braithwaite, 2025 WL 1784435, at *5. He has obtained and kept a full-time job as a truck driver, recently welcomed a new baby, volunteers as an assistant coach at his nephew's school, and socializes with family and work colleagues. Def.'s Mot. 2-3. This post-release conduct indicates that further supervision is not needed. See Harris, 258 F. Supp. 3d at 150 (granting early termination where defendant "compli[ed] with all of the

---

[7] Harris also noted that, although the D.C. Circuit quoted approvingly from Lussier in United States v. Mathis-Gardner, 783 F.3d 1286 (D.C. Cir. 2015), it did so only to highlight that the district court there abused its discretion in denying without explanation a motion to terminate supervised release early where the record indicated that the defendant met even Lussier's "high burden." Harris, 258 F. Supp. 3d at 148 n.9 (quoting Mathis-Gardner, 783 F.3d at 1289-90).

[8] Even starting from the premise that "mere compliance 'generally' is not enough to satisfy a court that early termination is warranted" because "compliance with all conditions is expected of an individual on supervised release, and non-compliance is a ground for revocation," Braithwaite, 2025 WL 1784435, at *5 (quoting Hale, 127 F.4th at 641), compliance with all conditions for multiple years is, in fact, "fairly extraordinary," id. (quoting Raymond, 2019 WL 1858285, at *3).

terms of his supervised release"; changed his "circle of friends"; achieved "gainful and successful full-time employment"; and "participat[ed] in his community through church attendance, assisting at his son's pre-school, and volunteering in a youth program); Tanguay, 2021 WL 1966602, at *3 (granting early termination where defendant was "entirely compliant" and "successfully reintegrated into his community," including by maintaining a stable residence, spending time with family, participating as member of his church, and taking care to pay towards his fine balance). For the same reason, early termination is also in the interest of justice. See Harris, 258 F. Supp. 3d at 150; Raymond, 2019 WL 1858285, at *4.

## Conclusion

For the foregoing reasons, the Court will grant Ewing's motion for early termination of supervised release. A separate order will accompany this opinion.

/s/
JOHN D. BATES
United States District Judge

Date: November 14, 2025